**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| CARROLL BOSTON CORRELL, Jr., | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 3:16-cv-00467-REP |
| | § | |
| v. | § | |
| | § | |
| MARK R. HERRING, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

This Court should deny Plaintiff's motion for a temporary restraining order and dismiss the case. Plaintiff has waited until the last minute to find his conscience and file suit. On the eve of the Republican National Convention, Plaintiff asks this Court to take the extraordinary step of declaring unconstitutional a long-standing state law respecting the conduct of elections for the highest office in the land. Plaintiff asserts the state is burdening *his* constitutional rights by requiring him to vote in accord with the will of the people. But it is Plaintiff who is attempting to disenfranchise the good people of Virginia. Plaintiff, just like the intervenors, voluntarily took on the mantle of being a delegate. And as the word "delegate" conveys, Plaintiff has been delegated authority by the people and by the Republican Party. The statute at issue merely protects the will of the voters of Virginia who participated in the primary process and are represented by elected delegates like the Plaintiff and Intervenors. He was chosen to convey the will of Virginians at the Republican National Convention, and he knew the rules when he voluntarily stood for election to be a delegate.

Plaintiff's request for a temporary restraining order fails at virtually every turn. Foremost, his claim is barred by laches. Plaintiff has waited until the last moment to file this lawsuit, even though the statute has been on the books for years and Plaintiff was selected as a delegate months ago. Indeed, Plaintiff and each Virginia Republican who sought election as a national convention delegate had clear notice that the Republican Party of Virginia had adopted a resolution in September of 2015. That resolution provided that each of "Virginia's 46 elected Delegates and 46 elected Alternate Delegates . . . are bound for the first ballot at the Republican National Convention based on the results as certified by the Virginia Board of Elections of the March 1, 2016 Virginia Presidential Primary." Republican Party of Virginia, State Central Committee, Virginia Delegate Allocation Resolution (Sept. 19, 2015) ("September Resolution") [App'x A]. Because Plaintiff has "slept on [his] rights to the detriment of the defendants," his motion "is barred by laches." *Perry v. Judd*, 840 F.Supp.2d 945, 955 (E.D. Va. 2012), *aff'd* 471 Fed. App'x 219 (4th Cir. 2012).

Second, Plaintiff lacks standing. He has no injury-in-fact (the first requirement for standing) because he was not actually assigned by the state party to a delegate slot bound to Donald Trump.[1] There is no process for assigning individual delegates to slots for specific candidates. Instead, Virginia's delegates are allocated on an aggregate basis and not on an individual-delegate basis. Thus, Plaintiff will suffer no crisis of conscience.

---

[1] Under the Rules of the Republican Party ("National Rules"), any presidential primary, caucus or convention held for the purpose of electing, selecting, allocating, or binding delegates to the national convention prior to March 15, 2016, must provide for the allocation of delegates on a proportional basis. National Party Rule 16(c)(2). Since Virginia held its presidential primary on March 1, 2016, it was required to allocate its national convention delegates between the various Republican presidential candidates on a proportional basis. September Resolution ¶2.

Further, even if there were an imminent injury, the cause of that is the party's rules not the state law. Thus, there is no causation (a requisite for standing). For that same reason, this Court cannot redress any claimed injuries (the third irreducible element of standing), because delegates' first-ballot votes are governed by the party's rules. And those rules dictate which candidate gets Virginia's votes. So even if Plaintiff obtained all the relief he requests and the state law were declared unconstitutional, his first-ballot vote would still be cast in accordance with the National Rules.

Finally, assuming Plaintiff can surmount these obstacles, he is still not entitled to relief under the familiar preliminary-injunction standard. First, he is unlikely to succeed on the merits because Supreme Court precedent dooms his claims. *See Ray v. Blair*, 343 U.S. 214 (1952). In *Ray*, the Court addressed a challenge to a requirement that state delegates be required to swear an oath to support the party's nominee. The Court wrote, even if there were a "constitutional freedom of the elector under the Constitution . . . to vote as he may choose in the *electoral college*, it would not follow that the requirement of a pledge in the *primary* is unconstitutional." *Id.* at 233 (emphasis added). That destroys Plaintiff's claims on the merits. Moreover, the equitable factors are all in favor Defendants in this case. Plaintiff's alleged injuries (which are nonexistent) are insufficient to overcome the state's interest in enforcing a democratically enacted law. For all of these reasons, the Court should deny Plaintiff's motion for a temporary restraining order and dismiss the case.

## BACKGROUND

First-ballot votes by delegates from Virginia to the Republican National Convention are locked in long before the convention occurs. Under the current National Rules, when a state has a primary (as Virginia did on March 1, 2016), the results of that primary must "be used to

allocate and bind the state's delegation to the national convention."   Republican National

Committee, Rule 16 (adopted 2012).   States that held primaries prior to March 15, 2016, are

required to allocate the state's national convention delegates to the various presidential

candidates on a proportional basis.

In accord with that rule, last September Virginia's Republican Party submitted its method

for selecting, allocating, and binding national-convention delegates to the Republican National

Committee.   *See* National Rule 16(f).   The submission notified the Republican National

Committee that "[e]ach of Virginia's 46 elected delegates . . . shall be bound for the first ballot at

the Republican National Convention based on the official results as certified by the Virginia

State Board of Elections of the March 1, 2016 Virginia Presidential Primary."   Virginia

Republican Party, *Statement Pursuant to National Rule 16(f)* (filed September 30, 2015).   Any

change to this plan now would be a material change to the Virginia Republican Party procedures

and would be barred under the National Rules.   *See* Rule 16(d)(12).   Though the Rules

Committee at the upcoming convention might alter some rules, the 2012 National Rules

governing the selection, allocation, and binding of delegates are in effect now; and those rules

will be used to resolve delegate contests for the 2016 convention.   *See* National Rules 13–25

(adopted in 2012).

Making good on its pledge to assign votes proportionally, after the Virginia primary the

Virginia Republican Party determined the first-round ballot at the national convention would be:

17 votes for Donald Trump, 16 for Marco Rubio, 8 for Ted Cruz, 5 for John Kasich, and 3 for

Ben Carson.   Once the party made that determination, a state convention and district conventions

were held across the state to select delegates to attend the national convention.   Before running

for an At-Large delegate position at the state convention, each candidate was required to sign a

"Declaration and Statement of Qualifications," by which he "agree[d] that if elected, my vote on the first ballot for President at the Republican National Convention will be bound by the results of the March 1, 2016 Virginia Presidential Primary."   [App'x B].

Plaintiff was elected as a delegate on April 16, 2016 at the Tenth Congressional District Convention.  Some Congressional District Conventions required candidates to sign a statement similar to the one required of At-Large delegates.  While it is unclear whether each congressional district required the declaration, it is clear that Plaintiff was on notice that the state party's September Resolution required all of Virginia's delegates to be bound on the first ballot at the national convention.

In fewer than three weeks, the Republican National Convention will occur.  At that convention, a delegate from Virginia has no way of determining whether his first-ballot vote is for a specific presidential candidate.  That is because the September Resolution allocates the delegates to the presidential candidates on an *aggregate* basis.  Thus, Virginia will cast 17 votes for Trump, 16 for Rubio, and so on.  In this way, individual *delegates* are not truly assigned to specific candidates.  Rather the entire delegation's first-round votes are.  No delegate is required to individually vote for a particular candidate; and the certified results from the Virginia State Board of Elections and the state party's allocation of the delegates to the various presidential candidates does not lock down any particular delegate to any specific presidential candidate.

Today Plaintiff challenges a Virginia law that agrees delegates' votes should be bound on the first ballot.  Va. Code § 24.2-545(D).  Section 545(D) provides that if a party chooses to have a presidential primary and then later chooses delegates through some other means (*e.g.*, a convention), then "those delegates and alternates shall be bound to vote on the first ballot at the national convention for the candidate receiving the most votes in the primary."  Va. Code § 24.2-

545(D).  The only difference between the state law and the party's rules is how the votes are

assigned.  The state prefers a winner-take-all methodology, while the Virginia Republican Party

(in accord with the National Rules) allocated delegates on a proportional basis.  Which approach

is superior in terms of representing the will of the people is not at issue.  What is at issue is

whether an individual delegate, at the eleventh hour before the national convention, can enjoin a

state law that will have no real effect on him.

**STANDARD OF REVIEW**

Plaintiff asks this Court to "enjoi[n] Defendants, who are officials of the Commonwealth

of Virginia, from enforcing a statutory provision, Code of Virginia § 24.2-545(D)."  Pls. Mot. for

TRO and Prelim. Inj. 1 (Page ID #27).  To justify the extraordinary remedy of a temporary

restraining order, Plaintiff must show that (1) he is "likely to succeed on the merits"; (2) he is

"likely to suffer irreparable harm in the absence of preliminary relief"; (3) the balance of

hardships weighs in his favor; and (4) the injunction is in the public interest.  *Winter v. Nat. Res.*

*Def. Council*, 555 U.S. 7, 20 (2008); *see also League of Women Voters of N.C. v. N.C.*, 769 F.3d

224, 236 (4th Cir. 2014).  Because Plaintiff asks the Court to take action that will modify

electoral processes on the eve of the convention, this Court "should pay particular regard for the

public consequences in employing the extraordinary remedy of injunction."  *Real Truth About*

*Obama Inc. v. FEC*, 575 F.3d 342, 347 (4th Cir. 2009) (emphasis omitted) (quoting *Winter*, 555

U.S. at 24), *vacated on other grounds* by 559 U.S. 1089 (2010).

**ARGUMENT**

**I.   LACHES BARS RELIEF**

Plaintiff has slept on his rights.  Plaintiff was elected as a delegate on April 16, yet he

waited two months to file this lawsuit.  Accordingly, laches bars relief in this matter.  Laches is

6

an affirmative defense to claims for equitable relief.  *See White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990).  Establishing laches "requires proof of two elements: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice."  *Perry v. Judd*, 840 F. Supp. 2d 945, 953 (E.D. Va. 2012), *aff'd* 471 Fed. App'x 219 (4th Cir. 2012).  A court can infer that the defendants have been prejudiced simply from a plaintiff's lack of diligence in filing suit.  *Id.* at 954 (citing *White*, 909 F.2d at 102).  Further, laches can bar challenges to alleged constitutional violations, including violations of the First Amendment.  *Id.* at 953 (denying preliminary injunction sought by Presidential candidates for an alleged infringement of their First Amendment rights on the basis of laches).  The defense has "particular force in the context of preliminary injunctions against governmental action, where litigants try to block imminent steps by the government."  *Id.* at 950.

**Delay.**  Plaintiff has delayed (at the very least) over two months to file his claim, waiting until the just before the Republican National Convention to try and upend the process that has been firmly in place for some time.  Plaintiff was selected as a delegate at the Virginia Tenth District Republican Convention on April 16, 2016.  At least at that point he was aware of the state law and that Donald Trump received the most votes (the primary having occurred six weeks earlier).  Indeed, as of March 1 it was public record that Donald Trump received the most votes in the Virginia Primary.  Thus, as of that date potential delegates knew some first-round votes would go to Mr. Trump.  Despite that knowledge and his apparent belief that Trump is "unfit to serve as President of the United States," Plaintiff sought to be a delegate.  Mem. ISO Mot. for TRO 2 [PageID# 37].  If Plaintiff was so concerned about having to cast a vote for Donald Trump at the convention, why did he run to be a delegate?

Regardless, Plaintiff could have filed this lawsuit prior to running for a delegate slot. After all, the state party's September Resolution specifically provided for the binding of delegates on the first ballot at the national convention and required At-Large delegates to sign a form agreeing to be bound for the first ballot at the national convention. Based on publicly available information, at least two congressional district conventions required Congressional District delegate candidates to sign a form containing similar language. And even if Plaintiff claims he did not sign a pledge, he cannot claim ignorance. The state law has been on the books for years. And Plaintiff asserts he is a "long-time Republican Party leader and activist in the Commonwealth of Virginia." *Id.* Plaintiff has indefensibly slept on his rights and displayed a significant lack of diligence.

**Prejudice.** The fact that a plaintiff delayed can create an inference of prejudice to the defendants and satisfy the second element of laches. *Perry*, 840 F.Supp.2d at 954. This is especially true in the elections context because "[b]ringing lawsuits on the eve of pending elections disrupts the electoral process." *Miller v. Brown*, 462 F.3d 312, 320 (4th Cir. 2006). The Republican National Convention is fewer than three weeks away and yet Plaintiff wants to sow chaos at that meeting by challenging state law not only as it is applied to him, but also as it is applied to every other Virginia delegate. His delay was calculated to give the state (and the Court) as little time as possible to consider his claims. Thus the only reason for his delay was to prejudice defendants. *See Perry*, 840 F.Supp.2d at 955. For these reasons, Plaintiff's claim is barred by laches.

## II.     PLAINTIFF LACKS STANDING

In order to have standing, a plaintiff must satisfy three elements: injury, causation, and redressability.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).   Plaintiff fails each requirement.

*First*, the Party's rules govern how Virginia delegates to the National Convention are recorded on the first ballot, effectively meaning Plaintiff's specific vote will not be recorded as a vote for Mr. Trump.[2]  And with no vote to cast, there is no injury to Plaintiff's conscience.  The current version of National Rule 16 requires that when a state has a primary (as Virginia did), the results of the primary must "be used to allocate and bind the state's delegation to the national convention."   The Virginia Republican Party has already complied with that requirement, notifying the Republican National Committee that "[e]ach of Virginia's 46 elected delegates . . . shall be bound for the first ballot at the Republican National Convention based on the official results as certified by the Virginia State Board of Elections of the March 1, 2016 Virginia Presidential Primary."   September Resolution ¶1.  In fact, in order to run for a delegate position, many delegates were required to sign a "Declaration and Statement of Qualifications," by which they "agree[d] that if elected, my vote on the first ballot for President at the Republican National Convention will be bound by the results of the March 1, 2016 Virginia Presidential Primary." Plaintiff indisputably had notice of this requirement before deciding to run as a delegate from Virginia's Tenth Congressional District.

---

[2] To the extent state law conflicts with the party's rules (winner-take-all versus proportional-allocation), the party's rules governs because of the party's First Amendment rights to free association. *See Democratic Party of U. S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107 (1981) (*La Follette*); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 224 (1986).

Based on the results of Virginia's March 1 primary, the votes on the first ballot at the national convention will be: 17 votes for Donald Trump, 16 for Marco Rubio, 8 for Ted Cruz, 5 for John Kasich, and 3 for Ben Carson.  That means Plaintiff's specific vote will not actually be recorded as a vote for any candidate on the first ballot.  The delegation's vote will be recorded by the Convention Secretary in accordance with the results discussed above.  And since Plaintiff will not be required to do anything, he will suffer no injury.

*Second*, for much the same reason, Plaintiff cannot show causation.  Assuming one of Virginia's first-round "votes" for Donald Trump were somehow traceable to Plaintiff, Plaintiff's challenge to Virginia's law is still pointless.  He is required to "vote" for Donald Trump by the party's rules.  The state law is not causing him any injury.  And Plaintiff has no argument that the *party* cannot bind his vote.  The Republican Party is a private actor and thus cannot violate Plaintiff's constitutional rights by requiring him to vote a certain way.  *See Rippon Society v. National Republican Party*, 525 F.2d 567, 585 (D.C. Cir. 1975) (en banc).  Moreover, the party has its own rights of association that would defeat any contrary argument Plaintiff might make. *See Cousins v. Wigoda*, 419 U.S. 477, 487 (1972) (per curiam).  Indeed, even Congress has the right to expel members.  *Powell v. McCormack*, 395 U.S. 486, 548 (1969) ("Congress has an interest in preserving its institutional integrity," which usually can be "safeguarded by the exercise of its power to punish its members for disorderly behavior and, in extreme cases, to expel a member with the concurrence of two thirds").

Courts routinely rule in favor of the political parties when the parties place limits on and even expel members.  *E.g.*, *Lindstedt v. Missouri Libertarian Party*, 160 F.3d 1197, 1198 (8th Cir. 1998) ("We conclude that Lindstedt did not point to any facts showing the Libertarian Party was acting under color of state law when it refused to refund his $200 or when it acted to expel

him from his positions within the Libertarian Party."); *Johnson v. Knowles*, 113 F.3d 1114, 1120 (9th Cir. 1997) (county Republican Central Committee was not government actor because nothing tied the state to particular decision to expel two members because of their sexual orientation); *Banchy v. Republican Party*, 898 F.2d 1192, 1195 (6th Cir. 1990) (party did not act under color of state law in precluding members from voting in internal election for ward chairman).  Thus, even assuming there were imminent injury in this case (and there is not), that injury is not caused by the state law.

*Finally*, because Plaintiff cannot prove causation, he also fails the last requirement of redressability.  This Court cannot redress any asserted injury because even without the state law, Plaintiff's first-ballot vote remains bound.  *See Lujan*, 504 U.S. at 560.

Because Plaintiff will not suffer any injury caused by the state law and because this Court cannot redress the supposed injuries Plaintiff faces, Plaintiff lacks standing and the case should be dismissed.

## III.   PLAINTIFF IS NOT ENTITLED TO A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY INJUNCTION

Even if Plaintiff could get around laches and establish standing, he is nonetheless not entitled to an injunction.  Foremost, Plaintiff cannot show he is likely to succeed on the merits because he runs headlong into controlling Supreme Court precedent.  And even if he were likely to succeed, the equitable factors all point toward denying Plaintiff's motion.

### A.   Plaintiff Is Unlikely To Succeed On The Merits.

This case is directly controlled by *Ray v. Blair*, 343 U.S. 214 (1952).  In *Ray v. Blair*, an Alabama law allowed the state parties to require delegates to the national conventions to swear an oath to support the eventual nominee.  343 U.S. 214 (1952).  A delegate, Blair, refused to swear the oath and so the Alabama Democratic Party refused to seat him.  The Supreme Court

concluded that refusal was constitutional.  Although the Court's reasoning largely rested on the Twelfth Amendment (which directs how the President shall be elected), the Court also addressed a hypothetical constitutional claim by the delegate himself.   The Court opined that even assuming a law requiring a pledge of candidates for the Electoral College is not enforceable because it violates "an assumed constitutional freedom of the elector under the Constitution . . . to vote as he may choose in the electoral college, it would not follow that the requirement of a pledge in the *primary* is unconstitutional."   *Id.* at 230 (emphasis added).   That is because becoming a delegate "in the primary is a *voluntary* act of the applicant." *Id.* (emphasis added). And by becoming a delegate, that person "assume[s] obligations to vote for a certain candidate." *Id.*  The state can therefore limit whatever constitutional rights the primary delegate may have because the state has a legitimate interest in protecting the party "from intrusion by those with adverse political principles." *Id.* at 221–22.

*Ray* destroys Plaintiff's claims; thus it is unsurprising he does not even cite the case.  By voluntarily becoming a delegate to the Republican National Convention, Plaintiff assumed the "obligations to vote for a certain candidate." *Id.* at 229.   Plaintiff has presented no argument whatsoever that *Ray* does not control this case.  Indeed, "[b]oth the Supreme Court and lower courts have continued to rely on *Ray.*" *Kucinich v. Texas Democratic Party*, 563 F.3d 161, 166 (5th Cir. 2009); *see also Parson v. Alcorn*, 2016 WL 206466, at *9 (E.D. Va. Jan. 15, 2016); *Democratic Party of United States v. Wis.,* 450 U.S. 107, 122 (1981); *Ferency v. Austin,* 666 F.2d 1023, 1027 (6th Cir. 1981); *Duke v. Cleland,* 954 F.2d 1526, 1532 (11th Cir. 1992).

Plaintiff does make much hay out of various associational rights cases, which discuss the unsurprising proposition that political parties have associational rights.  But the *party* has not

challenged Virginia's law, Plaintiff (an individual delegate) has.   Thus, cases discussing the *party's* associational rights are inapposite.

For example, Plaintiff (at 6–7) relies heavily on *Democratic Party of U. S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107 (1981) (*La Follette*), where the Court concluded a state cannot compel a national political party to seat delegates chosen in a way that violates the party's rules. The Democratic Party's rules provided that only those who were willing to affiliate publicly with the party could participate in selecting delegates to the national convention.   Wisconsin law allowed voters to participate in the primaries without regard to party affiliation.   The national party refused to seat the Wisconsin delegates because Wisconsin's system violated the party's rules.   The Supreme Court held the party could refuse to do so because it had constitutionally protected rights of association.  *Id.* at 125–26.

*La Follette* provides Plaintiff no quarter.   The right discussed in *La Follette* belongs to the party, not the individual delegate.   So an individual *delegate* cannot raise the argument. Second, even though Virginia cannot require the *party* to accept delegates on the condition they be bound in their first vote, it does not mean the law is unconstitutional as applied to a *delegate*. If a party accepts the requirement that delegates' votes be bound, Plaintiff cannot override the party's associational rights.  *See Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 224 (1986).

*Cousins* is equally inapt.   419 U.S. 477.   There, much like in *La Follette*, the Court concluded a state could not require a political party to seat certain members.   As Plaintiff notes, the Court began by pointing out "[t]he *National Democratic Party* and its adherents enjoy a constitutionally protected right of political association" under the Constitution.   *Id.* at 487 (emphasis added).   Thus, the case does not stand for the proposition that an individual has a right

to unconditionally associate with a group.  The private group (here the Republican Party) is free to accept or reject people who want to be a part of the group.  *See La Follette*, 450 U.S. at 125.

Finally, if Plaintiff's position is correct, there is no limiting principle to save state laws that bind electoral college electors.  Indeed, that is likely why the Supreme Court decided *Ray v. Blair* the way it did.  Today, twenty-nine states and D.C. require (and have long required) their Electoral College electors to vote for the candidate that wins the statewide popular vote.  And this "long-continued practical interpretation of the constitutional propriety of an implied or oral pledge of his ballot by a candidate for elector as to his vote in the electoral college weighs heavily in considering the constitutionality of a pledge, such as the one here required, in the primary." *Ray*, 343 U.S. at 229–30.  Thus, Plaintiff is not likely to succeed on the merits.

### B.    The Equitable Factors Favor Denying the Motion.

The equitable factors this Court must consider before granting a preliminary injunction or temporary restraining order all counsel in favor of denying the motion.  First, because Plaintiff cannot establish his vote will actually be recorded as one for Mr. Trump on the first ballot at the convention, he cannot establish he will suffer any harm in the absence of the requested injunction.  *Winter*, 555 U.S. at 20.  Second, "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."  *New Motor Vehicle Bd. of Cal v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers).  And because Plaintiff faces no hardship whatsoever (or at the very least voluntarily and knowingly accepted that hardship two months ago), the balance-of-hardships factor favors the state.  Third, the public interest weighs strongly against last-minute changes to election laws.  *See Purcell v. Gonzalez*, 549 U.S. 1 (2006), *Frank v. Walker*, 135 S.Ct. 7 (2014) (Alito, J., dissenting, joined by Scalia, J. and Thomas, J.); *Veasey v. Perry*, 135 S.Ct. 9 (2014) (Ginsberg, J., dissenting, joined by Sotomayor, J., and Kagan, J.).  Especially in this case,

14

where the internal governing procedures of a political party are in play, the public interest weighs heavily against midnight changes. For all of these reasons the motion should be denied.

## CONCLUSION

The Court should apply laches and deny preliminary injunctive relief, in light of Plaintiff's undue and prejudicial delay in bringing this suit. Furthermore, the Court should dismiss the suit entirely because Plaintiff lacks standing. Finally, if the Court does reach the merits of Plaintiff's motion, the Court should deny the motion.

Dated: June 30, 2016                    Respectfully submitted,


                                        /s/ David A. Warrington
                                        _____

                                        David A. Warrington (Va. Bar No. 72293)
                                        Paris R. Sorrell (Va. Bar No. 80953)
                                        LECLAIRRYAN
                                        2318 Mill Rd., Suite 1100
                                        Alexandria, VA 22314
                                        Telephone: 703-647-5926
                                        Facsimile: 703-647-5966
                                        david.warrington@leclairryan.com
                                        paris.sorrell@leclairryan.com
                                        *Counsel for Intervenors*